## **CONFIDENTIAL SETTLEMENT AGREEMENT AND GENERAL RELEASE**

### ("AGREEMENT")

This is a Confidential Settlement Agreement and General Release ("Agreement") between Sarah Bales ("EMPLOYEE") and Woodall & Broome, Inc. ("COMPANY), whereby Employee agrees to release any and all potential or actual legal or administrative claims against the COMPANY, its employees, officers, directors, shareholders, parent or affiliated corporations or entities, partners, heirs, successors, assigns, or attorneys (the "Released Parties"), in exchange for the good and valuable consideration set forth herein. This Agreement includes but is not limed to the currently pending matter of <u>Sarah Bales v. Woodall & Broome, Inc. (a Georgia Corporation)</u>, In the United State District Court, Northern District of Georgia, Atlanta Division, Civil Action File No.: 1:16-CV-00444-LMM (the "Lawsuit").

1. <u>Payment</u>. EMPLOYEE understands that by signing and returning this Agreement and, contingent upon EMPLOYEE's fulfillment of the conditions of this Agreement, the COMPANY agrees to pay EMPLOYEE and EMPLOYEE agrees to accept, in full satisfaction of any and all claims, including claims under the Fair Labor Standards Act ("FLSA"), the Americans with Disabilities Act ("ADA"), and the Age Discrimination in Employment Act ("ADEA"), for which EMPLOYEE has received a Notice of Right to Sue, the sum total of FORTY THOUSAND DOLLARS ($40,000.00) to be paid as follows:

    (a) Company will pay Plaintiff Forty Thousand Dollars ($40,000.00).

    (b) The payment will be made in two installments.

    (1) COMPANY will pay the first lump-sum check of $20,000.00 payable to EMPLOYEE's Counsel of Record on Form 1099. Woodall & Broome, Inc. shall issue an IRS Form 1099 to The Molden Law Firm, L.L.C. reflecting the payment of such amount. Said payment shall issue within five (5) business days of approval of this Agreement by the United States District Court for the Northern District of Georgia and Dismissal of Lawsuit, as set forth in Paragraph 3 of this Agreement; EMPLOYEE'S Counsel of Record will issue a check in the amount of $10,000 payable to EMPLOYEE. Molden shall issue an IRS 1099 to Bales; and

    (2) COMPANY will pay $20,000.00 to EMPLOYEE's Counsel of Record within ninety (90) days of the approval of this Agreement by the United States District Court for the Northern District of Georgia and Dismissal of Lawsuit. Woodall & Broome, Inc. shall issue an IRS Form 1099 to The Molden Law Firm, L.L.C. reflecting the payment of such amount; EMPLOYEE'S Counsel of Record will

issue a check in the amount of $15,000 payable to EMPLOYEE. Molden shall issue an IRS 1099 to Bales.

(c) The $40,000.00 in total payments to Plaintiff is allocated as follows:

(1) *Lump Sum:* There is a genuine dispute between the parties regarding whether Plaintiff was exempt under the FLSA. Even if non-exempt under the FLSA, there is a genuine dispute regarding the possible overtime hours worked or owed. Further, Plaintiff claims that she was subjected to discrimination based on her age and disability, which Defendant denies. Accordingly, Company is issuing two separate lump sum payments totaling Forty Thousand Dollars ($40,000.00) in 1099 form to Plaintiff's counsel, The Molden Law Firm, L.L.C. with aforementioned payments to Plaintiff being paid to Plaintiff by Molden.

(2) *Attorney's Fees and Expenses:* Plaintiff also claimed attorney's fees under the Americans with Disabilities Act ("ADA"), the Age Discrimination in Employment Act ("ADEA"), and 29 U.S. Code §216(b) of the FLSA. Plaintiff's counsel handled the case on a 40% contingency fee basis for each of the above claims. Thus, a reduced percentage amount of $15,000.00 is allocated to attorney's fees and expenses.

2. <u>Effective Date of this Agreement</u>. This Agreement becomes effective and fully enforceable upon approval by the United States District Court for the Northern District of Georgia.

3. <u>Dismissal of Lawsuit</u>. As consideration and inducement for this Agreement, EMPLOYEE agrees to dismiss, **with prejudice**, any lawsuit EMPLOYEE may have filed against the Released Parties, In the United State District Court, Northern District of Georgia, Atlanta Division, Civil Action File No.: 1:16-CV-00444-LMM. The parties agree that the provisions of this Paragraph 3 are material provisions of this Agreement. The Dismissal of Lawsuit shall be completed within five (5) business days of the Effective Date of this Agreement as defined in Paragraph 2 of this Agreement.

4. <u>Release and Waiver of Rights and Claims by EMPLOYEE</u>. In exchange for the promises contained in this Agreement and to the extent permitted by law, EMPLOYEE agrees as follows:

(a) <u>General Release Of All Claims</u>. In exchange for the promises contained in this Agreement and to the extent permitted by law, EMPLOYEE hereby waives, releases and forever discharges, and agrees that EMPLOYEE will not in any manner institute, prosecute or pursue, any and all complaints, claims, lawsuits, claims for relief, demands, suits, arbitrations, actions or causes of action, whether in law or in equity, which EMPLOYEE asserts or could assert, at common law or under any statute, rule, regulation, order or law, whether federal, state, or local,

or on any grounds whatsoever, including without limitation, claims under the Fair Labor Standards Act (the "FLSA"), Title VII of the Civil Rights Act of 1964, the federal Equal Pay Act, the Rehabilitation Act of 1973, the Americans with Disabilities Act, the Family and Medical Leave Act of 1993 (the "FMLA"), the Employee Retirement Income Security Act of 1974, the Racketeer Influenced and Corrupt Organizations Act, the Financial Reform Recovery and Enforcement Act of 1989, Section 1981 of Title 42 of the United States Code, the federal Worker Adjustment and Retraining Notification ("WARN") Act, the Health Insurance Portability and Accountability Act ("HIPAA") any other state or city laws concerning workplace rights or obligations or payment of wages, claims for violation of privacy rights, claims for violation of civil rights, claims for denial of equal rights, discrimination, wrongful termination, retaliation, breach of contract, equitable remedies, interference with advantageous relations, all tort claims including but not limited to claims for emotional distress, mental anguish, workplace injuries, intentional infliction of emotional distress, and negligent infliction of emotional distress, and all claims that were or could have been raised by EMPLOYEE in the Charge or which arose prior to the date EMPLOYEE signs this Agreement (collectively "Claims") against the COMPANY and/or any of its current or former owners, officials, directors, officers, shareholders, affiliates, agents, employee benefit plans, plan administrators, representatives, servants, employees, former employees, attorneys, subsidiaries, parents, divisions, branches, units, successors, predecessors, and assigns (collectively, the "Released Parties") with respect to any event, matter, claim, damage or injury arising out of EMPLOYEE's employment with the COMPANY, the termination of such employment, any application for employment with the COMPANY, and/or EMPLOYEE's eligibility for employment with the COMPANY, and/or with respect to any other claim, matter, or event arising prior to execution of this Agreement by EMPLOYEE.

(b) <u>Release of ADEA Claim</u>. In consideration of those payments and benefits listed above which are payable under this Agreement, Employee further agrees to and hereby does knowingly and voluntarily release and discharge the Company and all other Released Parties from any and all claims, causes of action and demands of any kind, whether known or unknown, which Employee has or ever has had that arise out of employment with the Company and/or are based on acts or omissions occurring up to and including the date of this Agreement any claims arising out of the Age Discrimination in Employment Act, the Employee Retirement Income Security Act, and the Older Workers Benefit Protection Act, each as amended.

(c) <u>Included Released Claims Filed by Any Person or Entity in Connection with Employee's Employment.</u> EMPLOYEE agrees that should any person or entity file or cause to be filed any civil action, suit, arbitration, or legal proceeding seeking equitable or monetary relief in connection with any aspect of EMPLOYEE's employment relationship with the COMPANY, EMPLOYEE will not seek or accept any personal relief, including but not limited to an award of monetary damages or reinstatement to employment, in connection with such charge or claims.

(d) <u>Release of Existing but Currently Unknown Claims</u>. Notwithstanding any local or other law to the contrary, EMPLOYEE expressly agrees that Paragraph 4 above will extend and apply to all Claims, injuries and damages that EMPLOYEE may have against the COMPANY or any Released Parties at the time EMPLOYEE signs the Agreement, regardless of whether EMPLOYEE is aware of or suspects such claims, injuries or damages at the time EMPLOYEE signs.

  (e) <u>Claims Not Included</u>. EMPLOYEE agrees that the above paragraphs shall release the COMPANY and Released Parties from liability to the fullest extent permitted by law and only to the extent permitted by law. EMPLOYEE acknowledges that the General Release does <u>not</u> prohibit the following rights or claims: (1) claims that first arise after the date EMPLOYEE signs this Agreement or which arise out of or in connection with the interpretation or enforcement of the Agreement itself; or (2) any rights or claims, whether specified above or not, that cannot be waived as a matter of law pursuant to federal, state or local statute. If it is determined that any claim covered by this Agreement cannot be waived as a matter of law, EMPLOYEE expressly agrees that the Agreement will nevertheless remain valid and fully enforceable as to the remaining released claims.

  (f) <u>Acknowledgement</u>. The parties agree that each provision in this Paragraph 4, without limitation, is a material provision of this Agreement.

  (g) <u>Review Period and Revocation</u>. EMPLOYEE has 21 (twenty-one) days to review the terms and conditions of this contract, and have this contract reviewed by independent counsel. If you timely sign this letter, you may change your mind and revoke your agreement during the seven (7) day period after you have signed it. If you do not so revoke, this letter will become a binding agreement between you and the Company upon the expiration of the seven (7) day revocation period and approval of the Agreement by the United States District Court for the Northern District of Georgia (the "Effective Date").

  5. <u>Release and Waiver of Rights and Claims by COMPANY</u>

  (a) COMPANY represents that it has no current knowledge of any potential claim against EMPLOYEE arising out of her actions as an employee or agent of the COMPANY. However, COMPANY agrees to waive any and all claims it may have against EMPLOYEE, whether known or unknown.

  6. <u>Tax Reporting</u>. The COMPANY shall issue an appropriate Internal Revenue Service Form 1099 in relation to the payment described in Paragraph 1.

  7. <u>Tax Indemnification</u>. EMPLOYEE agrees to pay any amount that may be determined to be due and owing as taxes, interest and penalties arising out of the payment by the COMPANY, pursuant to Paragraph 1, should it be determined that all or part of such payment constitute gross income within the meaning of the Internal Revenue Code of 1986, as amended, or under any other federal, state or local statute or ordinance. EMPLOYEE further agrees to hold the COMPANY harmless against, and to indemnify the COMPANY for, any and all claims by the Internal Revenue Service, any other taxing authority or taxing agency (whether federal, state or local) which may be made against the COMPANY arising out of or relating to the COMPANY's failure to withhold any portion of such payment for income or social security tax purposes, or for any other purpose, and agrees to reimburse the COMPANY for any resulting payments, including without limitation, all penalties and interest to the Internal Revenue Service, any other taxing authority or other governmental agency, that the COMPANY must make in response to each such claim. The parties further agree that: (i) the COMPANY will give EMPLOYEE notice of any such

claim; and (ii) EMPLOYEE will cooperate with the COMPANY in the defense of any such claim. Further, in the event EMPLOYEE does not cooperate with the COMPANY and an action is commenced against EMPLOYEE to enforce the provisions of the paragraph, the COMPANY shall be entitled to recover its attorneys' fees, costs, disbursements and the like incurred in prosecuting this action.

8. <u>Agreement Not to Seek Rehire</u>. EMPLOYEE agrees that without prior COMPANY approval, EMPLOYEE will not seek or accept employment with the COMPANY or any assignment to or on behalf of the COMPANY as an independent contractor, whether directly or through any third party, and the COMPANY has no obligation to consider EMPLOYEE for any future employment or assignment.

9. <u>Mutual Confidentiality of Agreement Terms</u>. Except as permitted below, and with the exception of filing this Agreement with the United States District Court for the Northern District of Georgia, each Party agrees, at all times following the execution of this Agreement, to maintain as confidential and not to discuss in public, disclose in public, or disclose to any media, press representative, agent, or any other person not a party to this Agreement in writing, electronically, verbally, or in any other manner or medium of communication, any of the terms of this Agreement, other than simply stating that the matter has been resolved. No Party shall be prevented from sharing the terms of this Agreement with its counsel or its accountant and no person shall be prevented from providing the Agreement in response to a valid subpoena or document request in a legal proceeding. The Parties further agree to take all reasonable steps necessary to ensure that confidentiality is maintained by any of the individuals or entities referenced above to whom disclosure is authorized and agree to accept responsibility for any breach of confidentiality by said individuals or entities referenced above.

The Parties also agree and understand that this Paragraph 9 and its provisions regarding confidentiality are material to the each party's decision to enter into this Agreement and that a breach of these provisions would be a material breach of this Agreement. The Parties further acknowledge that any breach of any provision of this paragraph by either party or their agents, individually, jointly or through their attorneys, will cause the other party great and irreparable harm, for which the other party will have no adequate remedy at law, the non-breaching party will be entitled to injunctive and other equitable relief to prevent a breach or continued breach of this paragraph.

In the event that either party is asked about the Lawsuit or charges settled herein, that party and its Counsel shall respond only that the matter has been resolved to the parties' mutual satisfaction and shall make no further comment. Moreover, the extent that any Party can discuss the underlying facts and circumstances of the underlying lawsuit is similarly limited to either no comment or a statement that the matter has been resolved to the parties' mutual satisfaction and shall make no further comment.

10. <u>Liquidated Damages Provision.</u> EMPLOYEE recognizes that if EMPLOYEE breaches the foregoing confidentiality provision, the damages caused to COMPANY will be difficult or impossible to accurately determine. EMPLOYEE further acknowledges that COMPANY will be damaged should the confidentiality provision be violated, and accordingly,

5

EMPLOYEE agrees to pay liquidated damages to COMPANY for any violation of the confidentiality provision. EMPLOYEE agrees that, should EMPLOYEE violate the confidentiality provision, EMPLOYEE will pay COMPANY $5,000.00 for each violation, and further acknowledge that said payment is an accurate attempt to evaluate the potential damages, and that said amount does not constitute a penalty. EMPLOYEE further stipulates and acknowledges that $5,000.00 per violation of the foregoing confidentiality provision is a reasonable pre-estimate of the probable loss or damage to COMPANY that would occur if the confidentiality Agreement is breached.

11. <u>Attorney's Fees and Costs</u>. As further mutual consideration of the promises set forth herein, the COMPANY and EMPLOYEE agree that they each are responsible for their own attorney's fees and costs, and each agrees not to seek from the other or others released hereby, reimbursement for attorney's fees and/or costs relating to any matters addressed in this Agreement, except as may be otherwise set forth herein.

12. <u>No Admission of Liability</u>. EMPLOYEE specifically understands and agrees that by entering into this Agreement, the COMPANY and all other Released Parties do not admit any liability whatsoever to EMPLOYEE or to any other person arising out of any claims heretofore or hereafter asserted by EMPLOYEE, and that the COMPANY, for itself and all other Released Parties expressly deny any and all such liability or wrongdoing with respect to EMPLOYEE's employment, wages, or termination by COMPANY.

13. <u>Remedy For Breach</u>. The Parties acknowledge and understand that if either party breaches any provision of this Agreement, the other party shall have, in addition to and without limiting any other remedy or right it may have at law or in equity, the right to a temporary and permanent injunction restraining any such further breach, without any bond or security being required. In any such proceeding, the party in breach waives any defense that the non-breaching party has an adequate remedy at law or that the injury suffered as a consequence of such breach is not irreparable. In any such proceeding, the prevailing party shall recover its reasonable attorneys' fees and costs.

14. <u>Joint Participation in Negotiation and Preparation of Agreement and Execution in Counterparts</u>. The parties hereto participated jointly in the negotiation and preparation of this Agreement, and each party has had the opportunity to obtain the advice of legal counsel and to review, comment upon, and redraft this Agreement. Accordingly, it is agreed that no rule of construction shall apply against any party or in favor of any party. This Agreement shall be construed as if the parties jointly prepared this Agreement, and any uncertainty or ambiguity shall not be interpreted against any one party and in favor of the other. This Agreement may be executed by the parties in counterparts and each set of original executed counterparts shall be deemed an original copy of this Agreement.

15. <u>Assignments</u>. EMPLOYEE represents and warrants that EMPLOYEE has not assigned or transferred to any person or entity any of EMPLOYEE's rights which are or could be covered by this Agreement, including, but not limited to, any covenant not to sue and the waivers and releases contained in this Agreement.

16. <u>Severability</u>. Should any of the material provisions of this Agreement be rendered invalid by a court or government agency of competent jurisdiction, or should EMPLOYEE fail to fulfill EMPLOYEE's obligations under it, the remainder of this Agreement shall, to the fullest extent permitted by applicable law and at the COMPANY's option, remain in full force and effect, and/or EMPLOYEE will be obligated to return, in full or in part, as determined by the COMPANY, any and all consideration EMPLOYEE received in exchange for entering into this Agreement.

17. <u>Choice of Law</u>. The parties further agree that, to the extent not governed by federal law or otherwise prohibited by state law, the Agreement is governed by the laws of the State of Georgia, without regard to its principles on conflict of law. To the extent that a federal court or agency does not have jurisdiction over any action involving the validity, interpretation or enforcement of the Agreement, or any of its terms, provisions or obligations, the parties agree that jurisdiction and venue shall exist exclusively in a court or government agency located in the State of Georgia, unless specifically prohibited by applicable law.

18. <u>Joint Motion and Consent Order.</u> Because the Complaint includes claims under the FLSA, a Joint Motion and Order are being presented to Judge Leigh Martin May for approval of the Settlement. This Agreement shall only become final, binding and enforceable upon the issuance of an order by Judge May or other authorized judge of the United States District Court for the Northern District of Georgia. All Parties consent to the submission of the Joint Motion and Consent Order to Judge May and to the terms of this Settlement Agreement.

19. <u>Paragraph Headings</u>. Paragraph headings in this Agreement are included for convenience of reference only and shall not be a part of this Agreement for any other purpose.

20. <u>Understanding and Use of Agreement</u>. EMPLOYEE affirms and acknowledges that EMPLOYEE has read the foregoing Agreement, that EMPLOYEE has had the opportunity to review or discuss it with the counsel of EMPLOYEE's choice who has represented EMPLOYEE in negotiating its terms, and that EMPLOYEE fully understands and appreciates the meaning of each of its terms. The parties to this Agreement represent that this Agreement may be used as evidence in any subsequent proceeding in which any of the parties alleges a breach of this Agreement or seeks to enforce its terms, provisions or obligations.

21. <u>Entire Agreement</u>. The Parties understand, covenant, and agree that this Agreement constitutes the entire agreement relating to the matters stated herein, that there are no other agreements, covenants, promises, or arrangements between EMPLOYEE relating to the matters covered by this Agreement, that the terms and conditions of this Agreement cancel and supersede any prior agreements, promises, representations or understandings that may have existed between EMPLOYEE and COMPANY with respect to all matters covered by this Agreement, that no other promise or inducement has been offered to either party except as set forth herein, and that this Agreement is binding upon all parties, and their respective heirs, executors, administrators, successors and assigns. Notwithstanding the foregoing, all of EMPLOYEE'S post-termination obligations regarding, *inter alia*, confidentiality, remain in full force and effect.

22. No Prevailing Party. Except as expressly provided in this Agreement, neither EMPLOYEE nor COMPANY is a prevailing party in this matter.

23. No Oral Modification. This Agreement may not be changed orally; it may only be changed by a writing executed by both parties. The COMPANY'S failure to enforce any provisions of this Agreement will not constitute waiver of its rights under this Agreement.

24. Counterparts and Copies. This Agreement may be signed in any number of copies and counterparts, each of which shall be deemed an original when signed and shall constitute the same instrument. Fully executed photocopies of the Agreement shall be treated as originals.

PLEASE READ THIS AGREEMENT AND CAREFULLY CONSIDER ALL OF ITS PROVISIONS BEFORE SIGNING IT. YOU SHOULD CONSULT AN ATTORNEY OF YOUR CHOICE ABOUT THIS AGREEMENT BEFORE YOU SIGN THE AGREEMENT. THIS AGREEMENT CONTAINS A RELEASE OF ALL KNOWN AND UNKNOWN CLAIMS, INCLUDING STATE AND LOCAL LAWS PROHIBITING DISCRIMINATION IN EMPLOYMENT, TO THE EXTENT PERMITTED BY LAW.

I hereby AFFIRM AND ACKNOWLEDGE that I have read the foregoing Agreement, that I have had sufficient time and opportunity to review and discuss it with the attorney of my choice, that I have had any questions about the Agreement answered to my satisfaction, that I fully understand and appreciate the meaning of each of its terms, and that I am voluntarily signing the Agreement on the date indicated below, intending to be fully and legally bound by its terms.

_Sarah Bales_
Sarah Bales

Dated: 4-28-16

Witnessed by my counsel of record:

_____
Regina Molden Clowney, Esq.

Dated: _____

22. <u>No Prevailing Party</u>. Except as expressly provided in this Agreement, neither EMPLOYEE nor COMPANY is a prevailing party in this matter.

23. <u>No Oral Modification</u>. This Agreement may not be changed orally; it may only be changed by a writing executed by both parties. The COMPANY'S failure to enforce any provisions of this Agreement will not constitute waiver of its rights under this Agreement.

24. <u>Counterparts and Copies</u>. This Agreement may be signed in any number of copies and counterparts, each of which shall be deemed an original when signed and shall constitute the same instrument. Fully executed photocopies of the Agreement shall be treated as originals.

PLEASE READ THIS AGREEMENT AND CAREFULLY CONSIDER ALL OF ITS PROVISIONS BEFORE SIGNING IT. YOU SHOULD CONSULT AN ATTORNEY OF YOUR CHOICE ABOUT THIS AGREEMENT BEFORE YOU SIGN THE AGREEMENT. THIS AGREEMENT CONTAINS A RELEASE OF ALL KNOWN AND UNKNOWN CLAIMS, INCLUDING STATE AND LOCAL LAWS PROHIBITING DISCRIMINATION IN EMPLOYMENT, TO THE EXTENT PERMITTED BY LAW.

I hereby AFFIRM AND ACKNOWLEDGE that I have read the foregoing Agreement, that I have had sufficient time and opportunity to review and discuss it with the attorney of my choice, that I have had any questions about the Agreement answered to my satisfaction, that I fully understand and appreciate the meaning of each of its terms, and that I am voluntarily signing the Agreement on the date indicated below, intending to be fully and legally bound by its terms.

_____

Sarah Bales

Dated:_____

Witnessed by my counsel of record:

_____

Regina Molden Clowney, Esq.

Dated:_____

8

ACKNOWLEDGED AND AGREED:

By _____
On Behalf of COMPANY, Woodall & Broome, Inc.

Title: CEO

Dated: 5-2-16

Witnessed by my counsel of record:

_____
Carey E. Olson, Esq.

Dated: 5-4-16

9